IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**JEFF SEAMAN** and **SARA SEAMAN**, Individually and as parents of **WALTON DAVID SEAMAN**,

    Plaintiffs,

vs.

**WILSON COUNTY, TENNESSEE** and **DEPUTY ROBERT LOCKE**,

    Defendants.

No.: _____
JURY DEMAND

# COMPLAINT

Come the Plaintiffs, Jeff Seaman, Sara Seaman, and Walton David Seaman, and for their cause of action against the Defendant would respectfully show to the Court as follows:

## I. THE PARTIES

1.1    The Plaintiffs, Jeff Seaman, Sara Seaman, and Walton David Seaman, are residents of Wilson County, Tennessee, and Plaintiffs Jeff Seaman and Sara Seaman are the parents of Plaintiff Walton David Seaman, a minor.

1.2    The Defendant, Wilson County, Tennessee, is a governmental entity located in Wilson County, Tennessee, and at all times relevant to the Complaint was responsible for the customs, policies, procedures, and training of its employees at the Wilson County Schools and Wilson County Sheriff's Department, and was also responsible for the wrongs committed by Deputy Sheriffs pursuant to Tenn. Code Ann. §8-8-302.

1.3     The Defendant, Robert Locke, is, upon information and belief, a resident of Wilson County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff and School Resource Officer for Wilson County, Tennessee.  Defendant Locke is being sued in his individual capacity as a Deputy Sheriff of the Wilson County Sheriff's Department.

## II. JURISDICTION

2.1     This Court has jurisdiction over the Federal claims asserted in this action pursuant to 28 U.S.C. § 1331 (Federal Question) and § 1343 (Civil Rights), as well as 42 U.S.C. § 1983. This court has jurisdiction over the State claims asserted in this action pursuant to 28 U.S.C. § 1347 (Supplemental), as both the State claims and Federal claims form part of the same controversy.

## III. VENUE

3.1     Venue of this action is proper pursuant to 28 U.S.C. § 1391(b) in that the events giving rise to the action occurred in the Middle District of Tennessee.

## IV. NATURE OF THE CASE

4.1     This action arises under the Fourth Amendment to the United States Constitution and under federal law, specifically, the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 1983 *et seq*. for violations of the Constitutional Rights of the Plaintiff, Walton David Seaman.  It also arises under Tennessee law for a claim against Wilson County pursuant to Tenn. Code Ann. § 8-8-

302 as well as state law claims for assault and battery, false imprisonment, and malicious prosecution.

## V. FACTS

5.1     On February 27, 2024, Walton was a student at Wilson Central High School.

5.2     Walton receives special education services due to him being disabled and diagnosed with Attention Deficit Disorder, General Anxiety Disorder, Autism Spectrum Disorder, and Attention-Deficit/Hyperactivity Disorder, which is predominantly expressed through inattention.

5.3     Prior to February 27, 2024, Walton had been given a Functional Behavioral Assessment ("FBA") due to his disability and provided with an Individualized Education Program ("IEP") and Behavior Intervention Plan ("BIP").

5.4     Approximately two (2) days prior to February 27, 2024, Walton had been placed in isolation from his fellow students by the Comprehensive Instructional Program ("CIP") staff as punishment for a prior incident related to a manifestation of his disability.

5.5     February 27, 2024, was just two (2) days prior to Walton's birthday, and, while in isolation, he was trying to see and talk with his friends but was prevented from doing so by the CIP staff.

5.6     An incident began to develop as Walton's disability manifested in his attempt to have peer interaction while CIP staff prevented him from seeing or communicating with his friends.

5.7     Behavioral staff as well as SRO Kinslow surrounded Walton while the behavioral staff worked to get Walton calm and back in the CIP classroom.

3

5.8     At the time of this incident, Defendant Locke was a Deputy Sheriff with the Wilson County Sheriff's Department working as a School Resource Officer at Wilson Central High School.

5.9     Prior to February 27, 2024, Defendant Locke knew Walton and was familiar with Walton's status as a special education services student as well as his disabilities.

5.10    Walton had not been verbally or physically threatening or aggressive during the incident nor was he causing harm to himself or others or threatening to cause harm to himself or others.

5.11    After Walton was beginning to return to the CIP classroom and despite the fact that Walton was not verbally or physically threatening anyone, Defendant Locke ran past the behavioral staff and SRO Kinslow and began screaming in Walton's face.

5.12    After screaming in Walton's face, Defendant Locke then hit Walton with the classroom door several times before Walton turned to enter the classroom.

5.13    After striking Walton with the classroom door, Defendant Locke then reached for his handcuffs and forcibly threw Walton to the ground and handcuffed him.

5.14    The use of force by Defendant Locke, including striking Walton with the classroom door, throwing Walton to the ground, and handcuffing him was unnecessary and excessive because it served no legitimate law enforcement purpose, was not necessary to get Walton to return to the classroom, and served only to escalate the situation which had already been resolved by the behavioral staff prior to Defendant Locke's arrival.

5.15    Following the use of force by Defendant Locke to restrain Walton, Defendant Locke then placed Walton under arrest despite the absence of probable cause to believe Walton had committed a criminal offense.

5.16 Defendant Locke then transported Walton to the Wilson County Youth Services, where he was formally charged with Disorderly Conduct (Tenn. Code Ann. § 38-17-305), Resisting Arrest (Tenn. Code Ann. § 39-16-602), and Assault on Law Enforcement Officer (Tenn. Code Ann. § 39-13-116(a)).

5.17 In support of the criminal charges made against Walton, Defendant Locke filed a sworn affidavit of complaint in which he made false claims that Walton had physically assaulted him, was trying to run away, and was resisting arrest.

5.18 These statements were false because Walton was not trying to run away, he had not assaulted Defendant Locke or anyone else, and had not resisted arrest.

5.19 At all relevant times, Walton was a minor student who received special education services, was unarmed, posed no physical threat, and was not actively resisting.

5.20 Tenn. Code Ann. § 49-10-1304 prohibits the use of physical restraints on a student receiving special education services unless there is an emergency situation which is defined as a child's behavior posing a threat to the physical safety of the student or others nearby.

5.21 Because Walton's behavior was not posing a threat to the physical safety of himself or others nearby, there was no emergency which justified the use of physical restraints on Walton.

5.22 Tenn. Code Ann. §49-10-1305 prohibits the use of mechanical restraints on a student receiving special education services except in emergency situations where there is a threat to a student's physical safety or the safety or others nearby.

5.23 Because Walton's behavior did not pose a threat to the physical safety of himself or others nearby, there was no emergency which justified the use of mechanical restraints on Walton.

5.24 Defendant Locke lacked probable cause to arrest or prosecute Walton for Disorderly Conduct because there was no factual basis for a reasonable law enforcement officer to

5

Case 3:25-cv-00180     Document 1     Filed 02/18/25     Page 5 of 15 PageID #: 5

believe that Walton had intentionally caused public annoyance or alarm by engaging in fighting or in a violent or threatening behavior; refused to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or created a hazardous or physically offensive condition by any act that served no legitimate purpose; and Walton had not made any unreasonable noise which prevented anyone from carrying on lawful activities.

5.25 Defendant Locke lacked probable cause to arrest or prosecute Walton for resisting arrest because Walton had not intentionally prevented or obstructed anyone from stopping, frisking, halting, arresting or searching him and had not used force against Defendant Locke or anyone else.

5.26 Any physical contact by Walton with anyone else, including Defendant Locke, was incidental, unintentional, and inadvertent or was done merely to protect himself from the use of excessive force by Defendant Locke.

5.27 Defendant Locke lacked probable cause to arrest or prosecute Walton for assaulting a first responder or law enforcement officer because Walton had not knowingly caused bodily injury to Defendant Locke or anyone else nor any physical contact with Defendant Locke or anyone else which would be regarded as extremely offensive or provocative, including, but not limited to, spitting, throwing, or otherwise transferring bodily fluids, bodily pathogens, or human waste onto Defendant Locke or anyone else.

5.28 On November 26, 2024, the charges against Walton were formally dismissed with prejudice.

5.29 Defendant Locke had no reason to use physical force against Walton.

5.30 Defendant Locke was not justified in using physical force against Walton.

5.31    Defendant Locke was prohibited by state law from using physical and mechanical restraints against Walton simply to address a manifestation of Walton's disability which was not posing a risk of harm to himself or others.

5.32    In using force against Walton, Defendant Locke was deliberately indifferent to Walton's federally protected rights, including his right to be free from unreasonable and/or unnecessary force, excessive force that amounts to punishment, and the wanton infliction of pain.

5.33    Defendant Locke's use of force against Walton was unreasonable.

5.34    Defendant Locke's use of force against Walton was unnecessary.

5.35    Defendant Locke's use of force against Walton was excessive.

5.36    Defendant Locke's use of force against Walton was a wanton infliction of pain.

5.37    Defendant Locke's use of force against Walton was deliberate and intentional.

5.38    Prior to Defendant Locke's use of force against Walton, Defendant Locke was aware of Walton's disabilities, knew that Walton was receiving special education services, knew that Walton had a behavioral intervention plan, knew that trained personnel were already handling the manifestation of Walton's disability, and knew that there was a substantial risk of physical and emotional harm in using force against Walton.

5.39    Defendant Locke consciously disregarded the risk of harm to Walton and chose to use force despite being aware of the risk.

5.40    At the time Walton was assaulted by Defendant Locke, Walton was not physically or verbally threatening Defendant Locke or any other person.

5.41    At the time Walton was assaulted by Defendant Locke, Walton did not pose a significant threat to himself.

5.42    At the time Walton was physically assaulted by Defendant Locke, Walton did not pose a significant threat to Defendant Locke or any other person.

5.43    At the time Walton was assaulted by Defendant Locke, Walton's conduct did not create a rapidly evolving situation.

5.44    Defendant Locke unreasonably escalated the incident with Walton by assaulting Walton without warning or provocation.

5.45    In doing the acts alleged in this complaint, Defendant Locke was acting under the color of the statutes, ordinances, regulations, customs, policies, and usages of the Wilson County Government, the State of Tennessee and under the authority of his office as a Deputy Sheriff of the Wilson County Sheriff's Department.

5.46    As a result of the assault, arrest, and prosecution by Defendant Locke, Walton suffered physical injuries as well as emotional injuries which have been treated by his medical and mental health providers and Walton has required to leave his school and be placed in a private school at significant expense to his parents.

5.47    Defendant Wilson County is responsible for all wrongs, injuries, losses, damages and expenses resulting from the actions of Defendant Locke in his position as a Deputy Sheriff of Defendant Wilson County pursuant to Tenn. Code Ann. § 8-8-302.

5.48    Walton had not committed any crime, nor was there any evidence that he had done so.

5.49    Walton had not engaged in conduct which was violent or threatening nor had he placed anyone in any harm or danger or refused an order to disburse from an area of harm or danger and had not prevented anyone from carrying on any lawful activity.

5.50    Walton did not unlawfully resist any law enforcement officer's efforts to detain, search, or arrest him, nor did he interfere with the detention, search, or arrest of any other individual.

5.51    Defendant Locke knew that Walton had not committed any crime, had not assaulted a first responder or law enforcement officer, and had not resisted attempts to effect a stop, frisk, halt, arrest or search of himself or any other person.

5.52    Defendant Locke knew that Walton had obeyed all lawful commands of the law enforcement officers that he was able to obey.

5.53    Despite being aware that Walton had not committed any criminal offense nor offered any intentional resistance to the law enforcement officers and had attempted to obey all commands he was able to obey, Defendant Locke swore out criminal charges against Walton for violation of Tenn. Code Ann. § 39-17-305 – Disorderly Conduct – a Class C Misdemeanor; Tenn. Code Ann. § 39-16-602 - Resisting stop, frisk, halt, arrest or search - a Class B misdemeanor; and Tenn. Code Ann. § 39-13-116(a) – Assault on Law Enforcement Officer – a Class E Felony.

5.54    Defendant Locke's statements in his affidavit of complaint that Walton refused to obey verbal commands, tried to run away, tried to assault him, and tried to actively resist arrest were false.

5.55    The statements made by Defendant Locke in his affidavit of complaint were material in obtaining the criminal warrant against Walton for violating Tenn. Code Ann. §§ 39-17-305, 39-16-602, and 39-13-116.

5.56    Defendant Locke knowingly and deliberately made false statements to obtain the criminal warrant against Walton.

9

5.57 Defendant Locke, with reckless disregard of the truth, made the false statements to obtain the criminal warrant against Walton.

5.58 Without Defendant Locke's false statements, there was no probable cause for prosecuting Walton for violating Tenn. Code Ann. §§ 39-17-305, 39-16-602, and 39-13-116.

5.59 As a result of the criminal charges, Walton was prosecuted for these criminal acts and his parents incurred the expense of having to hire an attorney to defend Walton on the charges.

5.60 On November 26, 2024, all of the criminal charges pending in Wilson County Juvenile Court against Walton were dismissed with prejudice.

5.61 National, state and local standards limit the use of physical force only to overcome resistance, repel aggression, protect life, or retake a prisoner or property.

5.62 National, state, and local standards prohibit the use of physical force as a punishment.

5.63 National, state, and local standards prohibit the use of physical and mechanical restraints on a student receiving special education services.

5.64 The Fourth Amendment to the Constitution of the United States requires probable cause to exist before a person is arrested and prohibits the use of excessive force by law enforcement in arresting or detaining a person.

5.65 Defendant Wilson County is responsible for all wrongs, injuries, losses, damages and expenses resulting from the actions of its Deputy Sheriffs, including Defendant Locke, involved in Walton's arrest pursuant to Tenn. Code Ann. § 8-8-302.

## COUNT I

### (Fourth Amendment - Violation Of 42 U.S.C. § 1983 - Excessive Force)

6.1     Defendant Locke's actions and use of force as described above while acting under color of law were objectively unreasonable and excessive, thus depriving Walton of his rights as guaranteed under the Fourth Amendment to the United States Constitution to be free from the excessive use of force against him.

6.2     As a direct and proximate result of Defendant Locke's use of excessive force, Walton suffered physical and emotional injuries.

6.3     Pursuant to statute, Defendant Locke is liable to Plaintiffs for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT II

### (Fourth Amendment - Violation Of 42 U.S.C. § 1983 – False Arrest and Malicious Prosecution)

7.1     Defendant Locke's arrest of Walton and false statements and other actions described above to obtain a criminal warrant against Walton while acting under color of law, deprived Walton of his right to be secure in his person against unreasonable searches and seizure as guaranteed to Walton under the Fourth Amendment to the United States Constitution.

7.2     As a result of Defendant Locke's actions, Walton was arrested and prosecuted for violating Tenn. Code Ann. §§ 39-13-116, 39-16-602, and 39-17-305.

7.3     Defendant Locke made, participated in, and/or influenced the prosecution of Walton, in that he made false statements claiming that Walton had engaged in disorderly conduct,

active and intentional resistance to his arrest by law enforcement, and assault on a law enforcement officer.

7.4 Defendant Locke's statements were made knowing that the statements were false or with a reckless disregard to their truth.

7.5 The arrest and prosecution of Walton for violating Tenn. Code Ann. §§ §§ 39-13-116, 39-16-602, and 39-17-305 was without any probable cause because Walton did not intentionally prevent or obstruct any law enforcement officer from effecting a stop, frisk, halt, arrest or search of any person, did not assault a law enforcement officer, and did not engage in disorderly conduct, nor was there any evidence that he had done so.

7.6 As a direct and proximate result of the arrest and criminal prosecution of Walton for violating Tenn. Code Ann. §§ 39-13-116(a), 39-16-602, and 39-17-305, Walton was deprived of his right to be free from arrest and prosecution without probable cause.

7.7 The charges against Walton for violation of Tenn. Code Ann. §§ 39-13-116(a), 39-16-602, and 39-17-305 were dismissed with prejudice on November 26, 2024.

7.8 Pursuant to statute, Defendant Locke is liable to Walton for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
**(State Law Vicarious Liability - Tenn. Code Ann. §8-8-301, *et seq*.)**

8.1 Pursuant to Tenn. Code Ann. § 8-8-301, *et seq.*, Defendant Wilson County is liable to the Plaintiffs for the wrongs, injuries, losses, damages and expenses resulting from the actions of Defendant Locke who was a Deputy appointed by the Wilson County Sheriff and, at the time of the incident described in this complaint, was acting by virtue of or under color of that office.

## COUNT V
### (State Law Claims - Assault and Battery, False Imprisonment, and Malicious Prosecution)

9.1 On February 27, 2024, Walton was arrested and prosecuted for violation of Tenn. Code Ann. §§ 39-13-116(a), 39-16-602, and 39-17-305.

9.2 Defendant Locke used excessive and unreasonable force in effectuating Walton's arrest as described above amounting to an assault and battery upon Walton.

9.3 Defendant Locke restrained and arrested Walton without probable cause and without any evidence that Walton had committed any crime.

9.4 Defendant Locke started and/or brought about the criminal prosecution of Walton as described above with malice and without probable cause that Walton had committed any crime.

9.5 The charges against Walton were dismissed with prejudice on November 26, 2024.

9.6 As a result of the assault and battery, false imprisonment, and malicious prosecution by Defendant Locke against Walton, the Plaintiffs suffered significant harm and damages, including the physical, mental, and emotional harm to Walton as well as the costs and expense of defending Walton against the false charges and the cost and expense of treating Walton's medical and mental health injuries.

## DAMAGES

10.1 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Walton experienced significant emotional and physical pain and suffering.

10.2 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Walton experienced significant mental anguish and emotional suffering.

10.3     As a direct and proximate result of the unlawful conduct of the Defendants as described above, Walton has experienced a diminished quality of life and impairment to his ability to enjoy life.

10.4     As a direct and proximate result of the unlawful conduct of the Defendants as described above, the Plaintiffs incurred costs of hiring an attorney to defend Walton on the false charges.

10.5     As a direct and proximate result of the unlawful conduct of the Defendants as described above, Plaintiffs have incurred medical expenses for the treatment of Walton's physical, mental, and emotional injuries and may incur additional expenses in the future.

10.6     As a direct and proximate result of the unlawful conduct of the Defendants as described above, Plaintiffs have incurred expenses for Walton's education and may incur additional expenses in the future.

10.7     As a direct and proximate result of the unlawful conduct of the Defendants as described above, Walton has suffered a permanent injury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully demand judgment against the Defendants, jointly and severally to the extent permitted by law, as follows:

1.     That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2.     That Plaintiffs be awarded a judgment for compensatory damages in an amount to be determined by the trier of fact not to exceed the maximum amount allowed by law and that Defendant Wilson County be additionally jointly liable for compensatory damages up to the limits provided in Tenn. Code Ann. § 8-8-303;

3. That the Plaintiffs be awarded a judgment for punitive damages against Defendant Locke in an amount that is necessary to punish Defendant Locke and to deter others from committing similar wrongs in the future;

4. That the Plaintiffs be awarded their costs, litigation costs, discretionary costs, pre- and post- judgment interest, and attorney's fees pursuant to 42 U.S.C. § 1988; and

5. That Plaintiffs be granted such other, further, and general relief as to which they are entitled.

Respectfully submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

By: /s/ James Bryan Moseley
      James Bryan Moseley, No. 21236
*Attorneys for Plaintiffs*

237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
Phone: (615) 254-0140
Fax: (615) 634-5090
bryan.moseley@moseleylawfirm.com

15

Case 3:25-cv-00180   Document 1   Filed 02/18/25   Page 15 of 15 PageID #: 15